## The State of Texas v. City of Waxahachie.

### · No. 7971.

1. **Annexing Territory to City—Election.**—The opinion in Graham v. City of Greenville, 67 Texas, 62, adhered to as to the construction of article 503, Revised Statutes, and the mode of election held by adjoining inhabitants desiring such annexation.

2. **Same.**—Where the requisite vote is shown favoring such annexation it is immaterial that such vote was secretly taken or designedly kept from the knowledge of property holders within the annexed district.

3. **Same—Homestead.**—Without reference to what effect such annexation may have upon rural homesteads within the territory, it is not material that the territory was so occupied as rural homesteads or as agricultural lands.

4. **Same.**—Where a contiguous tract upon three sides of a city is sought to be annexed by vote of the inhabitants the vote will be treated as one application and for the entire tract; and so is it although parts of such territory belonged to different communities.

5. **Same.**—Where territory upon the east and north of the original city is annexed and the territory is half mile east and same north of the original limits, it will not vitiate the annexation proceedings that the north and east lines were ·extended until their intersection, and that at the northeast corner there was a part more than half a mile from the original city limits.

APPEAL from Ellis.  Tried below before Hon. J. Fred. Tucker.
The opinion states the case.

*F. M. Maxwell,* county attorney of Ellis County, Texas, and *Watts, Aldredge & Eckford,* for appellants The State of Texas, Gibson, Ferris, Sweatt, Dunlap, McElwrath, Leatherwood, Fears, and Reyburn.—1. The court erred in rendering judgment against plaintiffs and in favor of defendants, for this: that the pretended annexation of territory to the city of Waxahachie, as shown by the record, was without authority of the law and void; because no authority has been delegated by the Legislature to any person or official, under article 343, chapter 1, or under article 503, chapter 10, of title 17 of the Revised Civil Statutes, relating to cities and towns, or under any other law of this state; (1) to ascertain, define, and fix the boundaries of the territory to be annexed; and (2) to order an election for annexation, nor to give notice thereof, nor to hold the same, nor to determine the result of such election, nor to make return of the same, nor to contest the same.

2. The court erred in rendering judgment for defendants and against the plaintiffs, for this: that said articles 343 and 503 are inoperative and void; because there are no provisions of law for carrying said articles into execution—that is, the Legislature has failed to provide any authority or mode of ascertaining or fixing the boundaries of the territory to be annexed, or any machinery for ordering, holding, or returning the result of said election.  People v. Bennett, 19 Mich., 451; Bradbury v. Wagenhorst, 54 Pa. St., 182; Woodburry v. Berry, 18

Ohio St., 456; Smith v. The State, 66 Md., 215; Coe v. Lawrence, 1 E. and B., 456; Chaffee's App., 56 Mich., 244; Pillow v. Gains, 3 Lea, 466; Endl. on Int. of Stats., sec. 262; 1 Dill. on Mun. Corp., 4 ed., sec. 183, and notes; Buford v. The State, 72 Texas, 184.

3. The enactment of said articles 343 and 503 and the enforcement thereof is in violation of the Fourteenth Amendment to the Constitution of the United States, and in violation of section 19 of the Bill of Rights of the State of Texas, for thereby citizens of the United States and of this State would be against their consent deprived of their property, privileges, and immunities, and become disfranchised, without due course of the law of the land. 14th Amendment U. S. Const.; Bill of Rights State of Texas, sec. 19; Ex Parte Virginia, 100 U. S., 339; Neal v. Delaware, 103 U. S., 370; Rhine v. City of McKinney, 53 Texas, 354.

4. The evidence shows that no election was held to annex said territory, and that no voting was had for said purpose; and that the question of whether said territory should be annexed, and the boundaries thereof, was never submitted by election, by voting or otherwise, to the qualified voters living in said territory. Webster's Dic., word "Vote"; Repalje & L. Law Dic., words "Vote" and "Voting"; Rev. Stats., art. 503; Const., art. 6, secs. 2, 3, 4; Buford v. The State, supra.

5. The evidence shows such manifest fraud against the rights of relators and other qualified voters residing in said territory in all the proceedings by which said proposed annexation was accomplished, including the making of the affidavit and the adoption of the ordinance thereon, as to render the entire proceeding invalid, and require that the court should annul, vacate, and set the same aside. Cool. Con. Lim., 780, 781; State v. Young, 4 Iowa, 562; 1 Dill. Mun. Corp., 4 ed., secs. 311, 312.

6. As made manifest by the record, the attempt to include the farm and pasture lands lying beyond a quarter of a mile from the old city limits was a clear abuse of the exercise of power under the statutes. The State v. Eidson, 76 Texas, 305, 306; City of East Dallas v. The State, 73 Texas, 374; Baird v. The State, 79 Texas, 63.

7. The court erred in rendering judgment for defendants and against plaintiffs, because the territory attempted to be annexed included the rural homesteads of the relators. Const., art. 16, secs. 50, 51; Const., art. 11, secs. 4, 6; Bill of Rights, secs. 17, 19; Sayles' Civ. Stats., arts. 425, 478; 14th Amendment to U. S. Constitution; Bassett v. Messner, 30 Texas, 611–614; Fenley v. Dietrich, 12 Iowa, 517; Swearingen v. Bassett, 65 Texas, 271; Iken v. Olenick, 42 Texas, 195; Posey v. Bass, 77 Texas, 512; Evans v. Womack, 48 Texas, 231; Rogers v. Ragland, 42 Texas, 422; Rev. Stats., arts. 474–476.

*J. W. Ferris* filed an argument for appellants.

*G. C. Groce* and *M. B. Templeton*, for appellee.—1. A majority of the qualified electors in the proposed territory did vote—indicated their desire by signing an instrument in exact manner and as approved in the Graham case, which was accepted and acted upon by the city council.

2. If articles 343 and 503 are held valid, there can be no question of fraud except: (1) Were those who signed the petition for annexation qualified electors and inhabitants of the annexed territory? (2) As a proposition of fact appellee submits that there was no concealment in the circulation of the petition for annexation; that the question was one of general discussion; that no misrepresentation was made; that a large majority of the inhabitants of the annexed territory favor annexation.

3. The old corporate lines and northeast corner being at right-angles, or in a square, it was competent in extending the limits one-half mile to preserve the symmetry by extending the limits one-half mile each way; and especially is this so when no one lives on the territory, and the owners thereof sign the petition and consent and agree to it.

4. In cases of extending the limits of a corporation already in existence, the Legislature having fixed the extension to one-half mile, it is not an issuable fact as to the character of territory. Rev. Stats., art. 503; 57 Texas, 640; 52 Miss., 53; 58 Mo., 141; 58 Cal., 537; 60 Wis., 453; 2 Dill., sec. 794.

HENRY, ASSOCIATE JUSTICE.—This suit was brought to annul an ordinance of the city council of the city of Waxahachie annexing to the city territory adjoining it upon its east, north, and west sides. The city had accepted the provisions of title 17 of the Revised Statutes.

The following map of the old town and the addition was exhibited:

The city engineer testified substantially as follows: "The map shown me is a correct map of the lines of the old town, and of the annexed territory. I made the map. The red lines show the boundaries of the annexed territory, and the interior lines show the boundaries of the old town. The annexed territory is a half mile wide on the east side of the old town and a half mile wide on the north side. On the west side it is in irregular shape. The north and west sides are connected by a strip 370 feet wide. From the northeast corner of the old town to the northeast corner of the annexed territory is a distance of 1343 varas. The old town is about square, and the east and north annexed strips being a half mile wide, throws the northeast corner more than a half mile from any part of the old town."

There was evidence that about nineteen-twentieths of the territory added consisted of agricultural land occupied as rural homesteads by owners who were opposed to the annexation.

It was proved that the territory on the west side of the town that was annexed was occupied by a separate and distinct community from those who resided upon the part of the annexed territory that is situated on the north and east of the town, and that there were twenty voters residing on the west addition, of whom only two voted for or were in favor of the annexation. There were not more than seventy-five lawfully qualified voters residing in the annexed territory.

The voters indicated their consent to the addition of the territory by signing a paper reading as follows, and containing also a description of the territory, which is here omitted:

"*The State of Texas, County of Ellis.*—We the undersigned, inhabitants of the territory herein described adjoining the limits of the city of Waxahachie, State of Texas, and duly qualified to vote for members of the State Legislature, hereby cast our votes in favor of becoming a part of said city of Waxahachie, said above named territory being described as follows." [Here follows a description of the added territory.]

There were fifty-three signatures attached to the paper.

An affidavit of six persons was presented to the city council, to the effect that a majority of the qualified voters of the added territory, including the affiants, had voted in favor of annexing said territory to the city. Upon this evidence the city council acted and passed an ordinance declaring that said territory "be and the same is hereby received as a part of said city of Waxahachie."

It appears that the signatures to the paper were obtained on the same day that the ordinance was passed at a called session of the city council, and it is evident that the proceedings were intended to be kept secret from a number, if not all, of the influential property holders who were known to be opposed to the movement, and upon whose relation this suit was brought. The cause was tried without a jury and a judg-

ment was rendered in favor of the city. For the plaintiff the following propositions were contended for in the court below and are now urged here:

"1. That there was no election held and no voting had by and among the qualified electors residing in said territory upon the question of annexation. And that there was no notice given of any election, voting, or other mode of determining the question of annexation among and to said qualified electors before said ordinance was adopted.

"2. That more than nine-tenths of the territory attempted to be annexed by said ordinance was unoccupied and used exclusively for agricultural and grazing purposes.

"3. That the only town settlement upon said territory was along and near the eastern and along and near the northern boundary lines of said city, and that the attempted annexation of said agricultural and pasture lands was a clear abuse of power and not contemplated by law.

"4. That the territory attempted to be annexed was in excess of the legal limit; that by said ordinance it was attempted to annex territory lying more than a half mile from the city limits.

"5. That by one and the same act it was attempted to annex territory on the three sides of said city upon the petition of the electors constituting the city population living along and near the eastern and northern boundary lines of the city; and against the consent of nineteen-twentieths of the qualified electors residing in said territory on the west side of the city.

"6. That said attempted annexation was fraudulent and void, for that the petitions were secretly and hastily circulated, and the city council secretly and hastily convened and said ordinance adopted, without any notice whatever to relators and other qualified electors residing in said territory, who were thereby deprived of the right of being heard either as to the fixing of the boundaries or the policy of annexation.

"7. That the rural homesteads of relators, all married men and heads of families, occupying and using their said homesteads, were attempted to be annexed by said ordinance and included in the limits of said city without the knowledge and against the consent of relators."

The proceedings were had under article 503 of the Revised Statutes, which reads as follows:

"Whenever a majority of the inhabitants, qualified to vote for members of the Legislature, of any territory adjoining the limits of any city accepting the provisions of this title, to the extent of one-half mile in width, shall vote in favor of becoming a part of said city, any three of them may make affidavit to the fact, to be filed before the mayor, who shall certify the same to the city council of said city. The said city council may by ordinance receive them as part of said city; from thenceforth the territory as received shall be a part of said city, and the inhabitants thereof shall be entitled to all the rights and privileges of other

citizens, and bound by the acts and ordinances made in conformity thereto and passed in pursuance of this title."

The proposition that there "was no election held and no voting had" was fully considered by this court in the case of Graham v. The City of Greenville, 67 Texas, 62, and it was then announced that the voters are allowed to express their preferences on the subject by any method of voting which is satisfactory to themselves and to the city council, and that when it is shown by the proper affidavit that a majority have favored annexation the city council is authorized to receive the territory of their residences into the city limits.

This decision is binding upon us, and we entertain no doubt about its being a correct construction of the statute as it now reads.

With regard to the extent and description of territory that may be embraced, the rule enforced with regard to original acts of incorporation will not be applied in proceedings to add additional territory to existing corporations. The Legislature having prescribed a certain limit to which the boundaries of a city may be extended, without expressing any qualifications, the right to so extend them results without regard to the use or character of the occupation of the annexed territory. The territory added upon the north and east sides of the town was just one-half mile wide, and an intention to comply with the statute in that respect is evident. In order to preserve a square form the boundaries on each of said sides were prolonged until they intersected each other, whereby it results that the extreme northeast corner of the annexed territory is somewhat over one-half mile from the original corporate limits.

We do not think that an excess of territory so existing should be held to vitiate the proceedings, but we think it comes fairly within the spirit of the law to hold that such excess may properly be added to the corporate limits in order to preserve the desired shape of the boundaries of the city, which may be in some respects useful and material. As the statute under which the proceedings were conducted makes no descrimination with regard to the former extent of new territory that may be added to a city, other than a limitation upon its width, we do not feel authorized to do so. If there may exist in any case good reasons why any other limitation of the area of adjacent territory than the one with regard to its width should be prescribed, such reasons must be addressed to the Legislature and not to the courts. In this case, while the annexed territory lies on different sides of the original town it comprises but one body of land. The attempt to annex detached areas would present a different question.

The fact that territory adjacent to a city, which may otherwise be properly brought within the corporate limits, is occupied as a rural homestead does not in any respect affect or modify the authority of the Legislature to provide for its inclusion. What effect such inclusion

will have upon the homestead right is a different question—one depending upon other facts and properly determinable when the cases arise.

We are not able to attach importance to the objection that advantage was taken of those who were interested in and opposed to the annexation by the secrecy of the proceedings. It is not contended that in fact a majority of those lawfully qualified to vote on the question did not vote in favor of the annexation. The substance and forms of the law were observed. If those who were interested and not notified had voted against the measure the result would not have been changed. It is true that importance may very well be attached to the fact of notice and the manner of conducting and returning such elections, as well as to the situation and limit of the territory proposed to be annexed in other respects besides its width; but, as we have before suggested, these are all questions that should be addressed to the Legislature.

We find no error in the proceedings, and the judgment is affirmed.

*Affirmed.*

Delivered October 13, 1891.