CITY OF GLADEWATER V. THE STATE OF TEXAS, EX REL
MRS. E. L. WALKER, ET AL.

No. 7750. Decided December 17, 1941.
Rehearing overruled January 14, 1942.
(157 S. W., 2d Series, 641.)

*Hurst, Leak & Burke*, of City of Gladewater, for plaintiff in error.

*Fred Erisman*, Criminal District Attorney, *Ralph Prince*, Assistant Criminal District Attorney, and *Angus G. Wynne*,

*Henry H. Harbour and Philip Brin,* all of Longview, for relators.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This proceeding is in the nature of a quo warranto brought by the State of Texas by and through Oscar B. Jones, Criminal District Attorney of Gregg County, upon the relation of Mrs. E. L. Walker, a feme sole, W. H. York and Leland Fikes against the City of Gladewater, a municipal corporation organized under the general laws of Texas. The relief sought was a decree adjudging that the acts of the City in attempting to annex certain land belonging to the relators to the City were arbitrary, illegal and void, and an injunction against the officers and agents of the City prohibiting them from assessing or attempting to assess relators' said land for city tax purposes and from attempting to collect any taxes against same. Their prayer was denied by the trial court, but upon appeal the judgment of that court was reversed by the Court of Civil Appeals and judgment rendered to the effect that the act of the City in including the land of relators within the annexation ordinance in question was invalid and of no force and effect. 139 S. W. (2d) 283.

By ordinance dated December 23, 1936, there was added to the City of Gladewater a strip of land 800 feet in width extending practically the entire length of the East boundary line of the City, thence across the entire North boundary line and West boundary line, and across a part of the South boundary line. The boundaries of the extended area and the former boundaries of the City are shown in general by a map made a part of the opinion of the Court of Civil Appeals. The total area of the land included in the annexation ordinance is 442.29 acres of which about 70 acres belong to relators. It was not sought to have the ordinance declared void, but only to have same declared void in so far as it affected the relators' land.

In enacting the ordinance the City proceeded under the authority of Article 974, R. C. S., which reads as follows:

"When a majority of the inhabitants qualified to vote for members of the State legislature of any territory adjoining the limits of any city incorporated under, or accepting the provisions of, this title, to the extent of one-half mile in width,

shall vote in favor of becoming a part of said city, any three of them may make affidavit to the fact to be filed before the mayor, who shall certify the same to the city council of said city. The said city council may, by ordinance, receive them as part of said city; from thenceforth the territory so received shall be a part of said city; and the inhabitants thereof shall be entitled to all the rights and privileges of other citizens, and bound by the acts and ordinances made in conformity thereto and passed in pursuance of this title."

There were no irregularities in the election or other proceedings leading up to the passing of the ordinance. The area included in the strip sought to be annexed adjoined the limits of the city and did not exceed one-half mile in width. The ground upon which it was sought to have the ordinance declared void in so far as it applied to the lands of relators may be stated in general as follows: It was alleged that the property of relators within the extension was situated to the Southwest of the City where there is no territory built up or inhabited; that their land was not fit for city purposes, was not inhabited and was low, swampy, overflow land consisting only of oil properties, refineries, storage pits, storage tanks and salt water pits. It was further alleged that the land was not adapted to city purposes nor could it receive any protection or benefits from the City Government; that it was wholly unfit for habitation or residential purposes or for the purpose of ordinary business and was not suited for any purpose other than for the production of oil or the storage thereof, and the handling of salt water and refuse from the production and refining of oil. It was further alleged that this land was not susceptible of being used for any city or town purpose, and that the only purpose or intention the city could have had in annexing same was to collect taxes thereon, with no intention to use same for city purposes or to give it any benefit by reason of its being within the city limits. For further statement of the grounds upon which the relief was sought we refer to the opinion of the Court of Civil Appeals cited above.

The case was submitted to a jury on special issues, in answer to which it was found, first, that the city did not intend to use the land of relators strictly for town purposes, and, second, that when said ordinance was enacted the land of relators was not capable of being used for town purposes within a reasonable time. Before the case was submitted to the jury the City filed a motion for a peremptory instruction

in its favor, which motion was overruled. After the verdict was returned the City filed a motion for judgment non obstante veredicto, and upon said motion the trial court rendered judgment that relators take nothing. It is reflected by the record that the trial judge concluded that, as a matter of law, under the case of State v. City of Waxahachie, 81 Texas 626, 17 S. W. 348, the State and the relators were not entitled to the relief sought.

In the case of City of East Dallas v. State, 73 Texas 370, 11 S. W. 1030, the court pointed out that the words "to the extent of one-half mile in width," as used in the above article, were ambiguous. It was there stated that such words might be construed to mean either that the territory to be annexed be exactly one-half mile in width, or that it be at least one-half mile in width or that it be not more than one-half mile in width, but the construction was adopted that the Legislature thereby intended to place a limitation upon the power of annexing territory and that the language should be construed as if it read "not more than one-half mile in width." It is therefore settled that the statute prescribed a limitation as to the width of the territory to be annexed under its provisions. The effect of the judgment of the Court of Civil Appeals herein is to prescribe another limitation. We have concluded that in the Waxahachie case, supra, relied upon by the trial judge, it was definitely decided that no other limitation may be prescribed by the courts.

■ This case, in our opinion, cannot be distinguished from, and must therefore be ruled by the Waxahachie case, supra. By a comparison of the language of the statute as copied in the opinion in that case with its present language, Article 974, supra, it will be observed that no material change has been made therein. The opinion in the Waxahachie case was delivered on October 13, 1891. Earlier the same year, on May 22, 1891, the Court, with the same personnel had delivered the opinion in the case of Ewing v. State, 81 Texas 172, 16 S. W. 872, involving the original incorporation of an area into a city, in which it was held that the inhabitants of the city proper had no power to include adjacent unoccupied lands and lands used for farming purposes only within the boundary of the city, and that the attempt to do so was without authority of law. When the Court came to consider the Waxahachie case in which, as here, the question was not one of original incorporation, but of the extension of boundaries of an existing municipality in ac-

cordance with what is now Article 974, it was careful to note the distinction between original incorporation and annexation of territory, as reflected by this language:

"With regard to the extent and description of territory that may be embraced, the rule enforced with regard to original acts of incorporation will not be applied in proceedings to add additional territory to existing corporations."

The clearest statement which to our minds could be made of the holdings in the Waxahachie case would consist of quotations taken from the opinion. We, therefore, quote therefrom as follows:

"* * * The Legislature having prescribed a certain limit to which the boundaries of a city may be extended, without expressing any qualifications, the right to so extend them results without regard to the use or character of the occupation of the annexed territory. * * *

"* * * As the statute under which the proceedings were conducted makes no discrimination with regard to the former extent of new territory that may be added to a city, other than a limitation upon its width, we do not feel authorized to do so. If there may exist in any case good reasons why any other limitation of the area of adjacent territory than the one with regard to its width should be prescribed, such reasons must be addressed to the Legislature and not to the courts. * * *"

■ By reference to the summary of the briefs of the parties printed in connection with the official report of that case, it will be disclosed that every material question of law raised in the instant case was before the court for decision in that case. As noted above, the opinion in that case was delivered in 1891. Since that time no material change has been made in the article, although the statutes have been three times revised and recodified. As stated in Texas Fidelity and Bonding Co. v. City of Austin, 112 Texas 229, 246 S. W. 1026, 1029:

"It is an elementary rule of construction that where, after a statute has been construed by the highest court of the state, the Legislature reenacts the statute, whether by the adoption of Revised Statutes or by amendment, the act of the Legislature carries with it the construction previously placed upon the law by the court. Pearson v. West, 97 Tex. 238, 243, 77

S. W. 914; Hall v. White, 94 Tex. 452, 454, 61 S. W. 385; Johnson v. Hanscomb, 90 Tex. 321, 328, 37 S. W. 601, 38 S. W. 761."

We have, of course, examined all of the authorities cited by relators and those cited in the opinion of the Court of Civil Appeals. No reason is perceived why we should discuss them. We think it sufficient to observe that in none of them was the decision in the Waxahachie case overruled or in any degree modified. For the most part they involve statutes other than' Art. 974.

It is our order that the judgment of the Court of Civil Appeals be reversed, and that of the trial court affirmed.

Opinion adopted by the Supreme Court December 17, 1941.

Rehearing overruled January 14, 1942.