**CITY OF GRAND PRAIRIE et al.**

**v.**

**STATE ex rel. CROUCH et al.**

**No. 15500.**

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 26, 1954.

Rehearing Denied March 26, 1954.

A. J. Thuss, Jr., Dallas, and Archie C. Price, Grand Prairie, for appellants.

Howard M. Fender, Dist. Atty., Tarrant County, Fort Worth, Cantey, Hanger, Johnson, Scarborough & Gooch, Carlisle Cravens, and Ed Reichelt, Fort Worth, for appellees.

BOYD, Justice.

This is a suit filed in the District Court of Tarrant County by The State of Texas on relation of W. T. Crouch et al., in the nature of quo warranto and for injunction and damages against the City of Grand Prairie and its Mayor and Commissioners, individually and in their official capacities. All defendants filed pleas of privilege to be sued in Dallas County, and in the defendant city's plea of privilege, it was alleged that all its business is transacted and all its functions, both proprietary and governmental, are administered in Dallas County. The pleas were overruled and the defendants appealed.

The petition of appellees alleged that the City of Grand Prairie, on May 6, 1953, passed on first reading an annexation ordinance covering lands owned by the relators situated in Tarrant County; that said action was wholly unrelated to the city's needs, was arbitrary and unreasonable, and was part of a conspiracy to extend the purported corporate powers over appellees' lands, which are grazing and agricultural lands, when the purpose of the city was not to complete the annexation but to hold appellees' lands for "trading" purposes with other cities; that the city did not intend to render any services to the area in question at that time, or in the foreseeable future. Prayer was "to cancel, annul and hold for naught" the purported ordinance as to the area in dispute, and for injunction and damages. This suit was filed on June 19, 1953.

It was shown that all the individual appellants reside in Dallas County, and that the City Hall and municipal offices of appellant city are in Dallas County. There is evidence, however, that the city limits of appellant city extend three blocks, or more, into Tarrant County, irrespective of the lands involved in the proceedings giving rise to this suit.

Appellees controverted the pleas of privilege and alleged that venue lies in Tarrant County for the following reasons: (1) that the city, being partly in Tarrant County, is domiciled in that county; (2) that under quo warranto proceedings the venue lies in Tarrant County because the lands in dispute are in that county; (3) that appellants have committed an actionable conspiracy, which has damaged appellees, an essential part of which was committed in Tarrant County; (4) that in passing said ordinance on first reading appellants were guilty of legal fraud and defalcation within the meaning of Art. 1995, sub. 7, R.C.S., Vernon's Ann.Civ.St. art. 1995, subd. 7, and that an integral part of such fraud and defalcation occurred in Tarrant County; (5) that the actions of the city resulted in damage to the lands of appellees, which are situated in Tarrant County; (6) that ap-

pellants committed a trespass on property located in Tarrant County; and (7) that venue lies in Tarrant County under Art. 1995, sub. 29a, R.C.S., Vernon's Ann.Civ.St. art. 1995, subd. 29a, providing that all necessary parties may be joined in the suit, and if venue lies in the county as to one, then the other parties may be held in that county.

It seems to be conceded by all parties that for venue purposes a municipality is to be treated as a person, with the right to be sued in the county of its residence unless an exception to exclusive venue in that county is alleged and proved.

■ Appellants contend that no exception to exclusive venue in Dallas County has been sustained by the pleadings and evidence, and that the court erred in overruling the pleas of privilege. There are no special findings in the record, and we must presume that the court found the existence of all the exceptions to exclusive venue set out in appellees' controverting affidavit, which are supported by evidence of probative force. Suit v. Taylor, Tex.Civ.App., 218 S.W.2d 243; Chapman v. Chapman, Tex.Civ.App., 172 S.W.2d 127; Rasberry v. Jones, Tex.Civ.App., 195 S.W.2d 947; Nielson v. Jackson, Tex.Civ.App., 200 S.W. 2d 831.

Appellants' first point is that the city is domiciled in Dallas County, the county in which its City Hall is located and in which its governmental functions are performed. Appellees counter that it is a resident of both counties, and may be sued in either. The question does not appear to have been decided in this state.

Appellees call attention to this statement in McQuillin, Municipal Corporations, sec. 2491: "Where a city is situated on the line between two counties, the action may be brought in either county," and to the holding in Fox v. City of Fostoria, 14 Ohio Cir. Ct.R. 471, 8 Ohio Cir.Dec. 39, cited by the author in support of his text. That case, however, was reversed by the Supreme Court of Ohio, City of Fostoria v. Fox, 60 Ohio St.R. 340, 54 N.E. 370, 371. In that case it was shown that the defendant city

was situated in two counties, the county in which the suit was brought and another county in which its principal place of business and all of its offices were located. The court said: "* * * But it is also claimed that, where a city is partly within one and partly within another county, it has a situs in each. This, we think, is not admissible. If this were so, it would be two cities instead of one. It would be quite as consistent with reason to say that an individual could have two domiciles. The situs of a city is to be determined by the place where its principal seat of municipal government is located. * * *"

In Mayor and Council of Town of Arlington v. Calhoun, 148 Ga. 132, 95 S.E. 991, 992, the defendant city was situated in two counties, in one of which, Early County, the suit was brought. In holding that the city's residence was in the other county, the court said: "* * * In our opinion the controlling fact is the location of the council chambers, the office of the town clerk, the depository of the municipal records, the police court, and the voting for all municipal elections. These are all in Calhoun county, * * *. All official acts of the mayor and council as such are done there. The trial of offenses done in and against the municipality are held in said county. There the municipal sales are had. * * * we have reached the conclusion, * * * that the determination of the residence of the municipality in such cases should be reached by analogizing the situation to that arising when the question is the determination of the venue of suits against other corporations. * * *".

In Maisch v. City of New York, 193 N.Y. 460, 86 N.E. 458, 460, suit was brought against the city in Kings County, one of several counties into which the city extended. In holding that the suit would lie only in New York County, the court said: "* * * It is suggested, however, that it would be better to take a broader and more natural view, and hold that a city is a resident of every county into which its territory extends, but that subject is not for the courts to deal with. A corporation

necessarily resides, so far as a corporation can have a place of residence, within the territory of the sovereignty which created it. [City of] St. Louis v. [Wiggins] Ferry Co., 11 Wall. 423, 429, 20 L.Ed. 192. In this state the Legislature creates municipal corporations, and confers upon them such powers and attributes as it sees fit. We think it has conferred upon every city in the state the attribute of residence in that county in which its principal place of business is located, so far as residence controls the jurisdiction of county courts. While we do not usually speak of a city as carrying on business, any more than a charitable corporation, still it does carry on the important business of government, and its principal place of business within the meaning of the statute under consideration is that place where its chief governmental functions are exercised. * * *"

■ We are impressed with the force of the arguments advanced by the courts in the cases cited, and, believing they are applicable here, we cannot escape the conclusion that in the contemplation of the venue laws of this state the City of Grand Prairie is a resident of and is domiciled in Dallas County, where its governmental functions are exercised.

■ The City of Grand Prairie has a Home Rule Charter and it is not questioned that it has authority to extend its boundaries and to annex territory adjacent to the city. Art. 1175, sub. 2, R.C.S.

■■ It seems clear to us that passing the ordinance on first reading was a valid exercise of legislative power, and not subject to revision by the courts. This is so, regardless of the adaptability for city purposes of the area involved, and regardless of the use or character of the occupation of the territory. Complaints on that account must be addressed to the Legislature. Norris v. City of Waco, 57 Tex. 635; State v. City of Waxahachie, 81 Tex. 626, 17 S. W. 348; City of Houston v. State ex rel. City of West University Place, 142 Tex. 190, 176 S.W.2d 928; State ex rel. Martin

v. City of Waxahachie, Tex.Civ.App., 248 S.W.2d 971; State ex rel. Graves v. City of Sulphur Springs, Tex.Civ.App., 214 S.W. 2d 663; City of Gladewater v. State ex rel. Walker, 138 Tex. 173, 157 S.W.2d 641. If the city had the right to pass the ordinance on first reading, we cannot understand how that procedure could constitute actionable conspiracy, fraud or defalcation, trespass on the lands involved, or damages to the lands for which an action will lie. In cases other than those in which the character of the action fixes the venue, the burden is on those claiming exceptions to exclusive venue in the county of the defendant's residence to plead and prove a prima facie cause of action under one of the exceptions.

■ There was evidence that the market value of appellees' lands had been decreased by the fact that it is not known whether the lands are in or out of the city. We have been cited to no authority indicating that if the action of the city was legal that damages, through real and substantial, resulting to lands in Tarrant County, could be the basis for an exception to exclusive venue. This is not such a suit for damages to land as may be maintained in the county where the land is situated, in venue cases. This is a suit against a city for alleged illegal, unreasonable and arbitrary "misuse" of the power of annexation. We think the venue is in the county where the seat of the city's government is located and where its govmental acts, however illegal, unreasonable and arbitrary they may have been, were performed.

■ It is not shown that the Mayor and Commissioners as individuals did anything in furtherance of the matters here complained of, but all of their acts were done in their official capacities, and were the acts of the city. Consequently, we think that venue as to them in their individual capacities is not shown to lie in Tarrant County.

■ Nor do we understand that this suit's being a quo warranto proceeding in

any way affects the venue question. It is true that Art. 6253, R.C.S., provides that petitions for leave to file an information in the nature of quo warranto may be presented to the district court of the proper county; but the statute does not undertake to say which is the "proper county." We are not called upon to decide whether Tarrant County would be a "proper county" for this lawsuit if no plea of privilege had been filed. Of course, courts may have jurisdiction without having venue; and it is venue and not jurisdiction that is here involved.

All parties admit that in the evidence and in their briefs the merits of the case have been dipped into. The same may be said of this opinion. It was made almost imperative by the nature of some of the grounds of exception to exclusive venue. In appraising those grounds, we adverted to some established rules of law as to the powers of Home Rules cities in this state, without in any sense deciding the controversy on its merits. Although it seems to be established by some of the authorities cited above that a city's power to annex territory, or to take a step in that direction by passing an ordinance on first reading, is limited only by the requirements that the territory be adjacent, and be not already "taken" by another municipality, and that therefore in the scramble for additional territory the city that first sets in motion the annexation machinery has an advantage over other cities, we are only holding that if such actions of a city are to be questioned in a court, it must be in a court of the county where the city has its legal residence or domicile. If that attack fails because of lack of the court's power, resort may be had to the Legislature. If that fails, parties will still have the consolation of knowing that their property was "taken" according to law.

Believing that the pleas of privilege should have been sustained, the judgment is reversed and judgment here rendered that the cause be transferred to the district court of Dallas County.